Henrietta Apartments Trust, The Riggs National Bank of Washington, D.C., Trustee v. Commissioner.
Apartments Trust v. Commissioner
Docket No. 508.
United States Tax Court
1944 Tax Ct. Memo LEXIS 371; 3 T.C.M. (CCH) 133; T.C.M. (RIA) 44035; February 11, 1944
*371 James C. Rogers, Esq., 810 Colorado Bldg., Washington, D.C., for the petitioner. L. W. Creason, Esq., for the respondent. SMITH Memorandum Opinion SMITH, Judge: This is a proceeding for the redetermination of deficiencies in income tax for 1939, 1940, and 1941, inclusive, of $42.91, $122.35 and $916.94, respectively. The sole question in issue is whether or not the Henrietta Apartments Trust was taxable for the years 1939, 1940, and 1941 as a trust or as a corporation. Upon a ruling by the Commissioner of Internal Revenue the petitioner filed income tax returns for the taxable years as an association taxable as a corporation. It is stipulated that if the petitioner is not taxable as a corporation it was not liable to income tax for the tax years in question. The essential facts have all been stipulated and the stipulation is adopted as our findings of fact. [The Facts] The trustee for the petitioner is a national bank of Washington, D.C. The returns for the years here in question were filed with the collector of internal revenue for the district of Maryland. In the year 1933, a default having occurred in respect of the promissory notes secured by first deed of trust on *372 real property in the District of Columbia known as the Henrietta Apartments at No. 933 N Street, N.W., an action was commenced in the District Court of the United States for the District of Columbia for the appointment of receivers to manage the property pending a foreclosure under the deed of trust. Receivers were appointed who managed the property until 1939. In 1939 an agreement was reached between the holders of the notes secured by the deed of trust and the owners of the property as a result of which the notes were surrendered and cancelled and the property was conveyed free and clear of all encumbrances to the Riggs National Bank of Washington, D.C., as trustee. The bank took title to the property for the benefit of the noteholders under the provisions of an agreement entered into under date of March 31, 1939, between the bank and the noteholders. Pursuant to the provisions of the trust agreement certificates of beneficial interest were issued to the noteholders who had surrendered and cancelled their notes. Under the trust agreement the bank as trustee was authorized to manage and operate the property pending sale, to employ a rental agent, to pay or to authorize the payment *373 of necessary operating expenses and any expenses necessary for the preservation and ultimate sale of the property, to offer the property for sale, to sell the property after first obtaining written approval of not less than 75% in amount of the outstanding certificates, and to encumber the property for the purpose of meeting necessary expenses in maintaining it. The agreement also contained provisions relating to the compensation of the trustee, the revocation or modification of the agreement and the substitution of a new trustee. Following the conveyance of the property to the bank, as trustee, in 1939, it employed the Floyd E. Davis Company as rental agent, kept account of the operations of the apartment, received the net collections from the Floyd E. Davis Company, paid some of the expenses which were not paid by the real estate agent, remitted every six months to the beneficial owners, and made efforts to sell the property in order that the trust might be liquidated. No substantial improvements were made in the property by the trustee, which, however, kept the property in reasonably good repair. Following the acquisition of the property by the trustee, none of the owners of beneficial *374 interests made any contributions of money or property towards the upkeep of the property. There were only twenty-eight noteholders. Two of them disposed of their notes before cancellation and issuance of the certificates of beneficial interest. Since the issuance of the certificates of beneficial interest only three of them have been transferred. The notes aggregated $62,500 in amount. The bank held $13,500 as substituted testamentary trustee under the will of Miller Joblin, deceased. The purpose of the receivership and of the subsequent trust, was to recover as much as possible of the noteholders' investment by ultimately selling the property and in the meantime protecting and conserving it. A sale at a satisfactory price was not possible during the period of receivership because during that time real estate conditions were bad and the recesiver did not report a single offer to the court. The bank, as trustee, has made many attempts and efforts to sell the property. The highest offer received was $60,100 in 1943. The offer was rejected because the property had been reappraised about two months previous to the receipt of the offer as being worth $67,500. The trust had no employees *375 other than those employed at the apartment house as janitor and elevator boys. The bank, as trustee, kept in its trust department complete, separate records of the operations of the trust but all moneys belonging to the trust were deposited in the common trust fund account of the bank with the American Security and Trust Company in an account known as The Riggs National Bank of Washington, D.C., Trust Funds. It is the respondent's contention herein that Henrietta Apartments Trust was an association taxable as a corporation during the tax years here in question. Section 19.3797-3 of Regulations 103, promulgated under the provisions of the Internal Revenue Code, reads in part as follows: SEC. 19.3797-3. Association distinguished from trust. - The term "trust," as used in the Internal Revenue Code, refers to an ordinary trust, namely, one created by will or by declaration of the trustees or the grantor, the trustees of which take title to the property for the purpose of protecting or conserving it as customarily required under the ordinary rules applied in chancery and probate courts. The beneficiaries of such a trust generally do not more than accept the benefits thereof and *376 are not the voluntary planners or creators of the trust arrangement. Even though the beneficiaries do create such a trust, it is ordinarily done to conserve the trust property without undertaking any activity not strictly necessary to the attainment of that object. * * * * *
The mere size or amount of capital invested in the trust is of no importance. Sometimes the activity of the trust is a small venture or enterprise, such as the division and sale of a parcel of land, the erection of a building, or the care and rental of an office building or apartment house; sometimes the activity is a trade or business on a much larger scale. The distinction is that between the activity or purpose for which an ordinary strict trust of the traditional type would be created, and the activity or purpose for which a corporation for profit might have been formed. It is the respondent's contention that the petitioner was not simply holding title to the property for the benefit of the noteholders and that the trust agreement was not executed primarily for the purpose of sale of the property. We think that this contention is not supported by the specific terms of the trust agreement. One of the preambles *377 of the agreement provides that the trustee is: * * * to take title as Trustee to said real estate from said Capital Realty Company, Inc., as aforesaid, and to thereafter operate, manage and sell said property for the benefit of the parties of the first part as hereinafter provided. * * * * *
(4) * * * The Trustee is also authorized to offer the said property for sale through brokers or otherwise, and shall make sale, provided that it is able to obtain a price which is approved in writing by the holders of not less than seventy-five per cent (75%) in amount of the outstanding certificates issued and outstanding as hereinbefore provided. * * * The respondent makes the further contention that the trustee did not list the property with real estate agents and made no worth-while effort to sell the property at a fair price. The evidence is, however, to the contrary. The trustee communicated with numerous real estate firms and they knew that the property was for sale and that if they could sell it at a reasonable price they would obtain a broker's commission on the sale. In , the court observed that the question *378 as to what was taxable as an association had recently been considered by it in , and that the word "association" implies a combination for the conduct of a business enterprise under a form of organization analogous to a corporation, evidenced by centralized control, continuity and limited liability as well as by the issuance of transferable certificates. The facts in the proceeding at bar are analogous to those which obtained in . A declaration of trust had been executed between the owners of the property and three trustees. Real estate and interests in minerals and timber land were conveyed to the trustees subject to the terms of the trust. The trust instrument provided that transferable certificates were to be issued as evidence of the interests of the grantors under the trust and in the royalties which might accrue from the properties. The trustees were empowered to sell or lease the property and to do those things deemed necessary properly to execute the trust, and to defend and protect the trust and its property. After payment of taxes and expenses, *379 including compensation to the trustees, the residue of moneys received by the trustees was to be distributed pro rata to the holders of the trust certificates. We held that the trustees were a conduit through which the income from the leased premises flowed to the owners thereof and that the trust was not an association taxable as a corporation. To the same general effect are ; Wyman Building Trust No. 1 ; Gibbs Preyer Trust No. 1, ; ; ; ; and . In , the court stated: * * * If there is a purpose of immediate liquidation as soon as circumstances will permit, and the carrying on of business is only incidental and necessary for the preservation *380 of the property, no taxable association has resulted. * * * There can be no doubt that in the instant case the renting of the apartment house was only incidental to a winding up of the trust. Where such a situation exists the principle of the above cited Helvering v. Washburn case is applicable. See ; ; and . It should be noted that the genesis of the present trust agreement was not a purpose on the part of the certificate holders to designate the trustee as their agent in carrying on a business enterprise. It was merely to enable them to receive some income upon their investment in the notes of the dissolved corporation and to recover as much as they could of the principal. The trust was a strict trust under the authorities above cited. Decision of no deficiency will be entered.